Counsel may prepare and submit a decree within 20 days.

**OHIO FERRO-ALLOYS CORPORATION, Appellant, v. TICHNOR, Admr., et, Appellees.**

Common Pleas Court, Muskingum County.

No. 41328.   Decided December 12, 1959.

R. M. Rybolt, Canton, for plaintiff.
Ross Johnston, Zanesville, for defendant Mansperger.
Mark McElroy, Atty. Genl., Daniel T. Lehigh, Asst. Atty. Genl., for defendant Board of Review.

**OPINION**

By CROSSLAND, J:—

The essential complaint of the appellant concerns four successive failures of its employee, a plant guard, Lauren Ray Mansperger, to report to work at the beginning of his turn, in each instance cautioning him that another such instance would result in discharge and dismissal, these four instances occurring within a period of slightly more than fourteen months, the fourth occurring March 4, 1958, a lateness of one and one-half hours.

The Administrator and the Board of Review differed in their view

as to whether such repeated and substantial tardiness constituted cause for discharge.

All other matters complained of by the employer or asserted in behalf of the employee were merely either emphasis of the complaint or extenuation and mitigation of such admitted failures and are relatively unimportant in assessing the basic question as to whether or not the final order of said Board was either unlawful, unreasonable or against the manifest weight of the evidence.

It would seem that the matters and details of benefits or exclusion therefrom are fully resolvable on the one issue as to whether there was or was not just cause for discharge.

There is no element of bad faith on the part of either the employer or employee. The company believed that it was entitled to rely upon punctuality of arrival of a plant guard and reasonable assurance that failure thereof would end and the employee guard believed, that he was excused by circumstances occurring in each instance that in his mind explained his tardiness, even though the act itself clearly violated the strict admonition successively given.

As this Court views the whole issue in this case, the material question is not one of prerogative or power but one of authority. Did the company employer have authority to discharge a plant guard for just cause when he failed to improve in his developing habit of substantial tardiness in reporting for work?

In examining the context of the experience of the fourteen months immediately preceding March 4, 1958, as contrasted with the preceding years, there was an evident trend away from punctuality and a disposition to feel excused by the individual's own personal circumstances.

That such circumstances were not reconciliable with the company's dependence upon prompt and punctual reporting was made quite plain and incisive at the very first of the four particular instances. It was clearly communicated to Mr. Mansperger that a plant guard was needed and his presence required at the given hour, not later, and that later was inimical and detrimental to its operation.

Who shall determine the importance and necessity of such an employee to be available at the time designated, the company whose business he is employed to serve or a third party Board of Review?

Is such a question one to be decided by others unconcerned and unaffected in the operation of the company's plant and the transaction of its work and business therein—by the "prerogative" of public office?

It would seem to this Court that the judgment reposed in a plant guard on his job would first dictate a sense of need to personally adjust to the requisite of punctuality to work and that matters attributable to lateness would be made measures to assure promptness.

Awakening, transportation and communication were all important considerations and the importance of the requirements of the job transcended other conveniences or desires.

The reasons for promptness or the effect of lateness were matters for the consideration and determination of the employing company in the absence of any known or discernible evidence to the contrary and established policy in this regard is understandable and should be un-

equivocal. Determination and control in such respect clearly lies in the field of management and its considered judgment is a part of the authority that underlies its responsibility as a private enterprise and answerable to its directors, stockholders and to its other employees in the plant's operation.

A satisfactory clock alarm is one that awakens at the necessary hour and improvised substitutes, however elaborate, are inadequate preparation.

Obviously, transportation should contemplate an alternative choice if one's own automobile is unavailable for any reason.

Satisfactory and instant communication should certainly always be at hand for an unexpected and wholly unavoidable circumstance, which in this case was totally lacking. It is inconceivable to this Court that any plant guard should not include a home telephone in his personal investment, whether to be called in a plant emergency or to call in on one of his own.

Certainly the fortification of easy and immediate communication apprises management of an essential preparation for the job of a plant guard and provides the assurance of knowing when or why lateness may be expected if it is suddenly and unexpectedly apt to occur and to act in accordance therewith. But an unannounced and previously unknown lateness of two hours, or one and one-half hours, can not be distinguished or known from one that may be much longer, when unnotified during or before such occurrence.

These latter clearly all lie in the capacity and determination of the employee but their impact and effect upon the operation and business of his employer are direct and consequential, and hence reflect the employee's responsiveness to the company's rules and requirements, or the absence thereof.

Should it be said that previously unknown, unannounced and undetermined latenesses should become frequent and chronic before redress may justly be had therefor, when it contravenes an employer's conception of the necessity of punctuality in a position of trust and responsibility?

This Court is of the opinion that the Board of Review in its final order herein attempted to exercise its own view of necessary discipline in place of the judgment and authority of management in the instant case, in effect saying that Mr. Mansperger was unjustly discharged and that the company should have continued to be subjected to the increasing failures and uncertainties of his compliance with their requirements. This on said Board's part was unreasonable and against and contrary to the manifest weight of the evidence. Accordingly, its order is reversed and vacated and final judgment accorded appellant, as appellee employee was discharged for just cause and is not entitled to unemployment benefits. Exceptions.

Journal entry may be prepared and submitted accordingly.